**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, ) | CR-10-00505-PHX-NVW |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| Dwayne Warren Bogan, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Before the Court is Defendant Dwayne Bogan's Motion to Suppress Defendant's Statements for *Miranda* Violation and Lack of Voluntariness (Doc. 54) and the Government's Response to Defendant's motion (Doc. 65). An evidentiary hearing was held on February 10 and 11, 2011. For the following reasons, the Court will grant Defendant's motion.

**I.  Background**

Mr. Bogan was pulled over while driving in Las Vegas, Nevada on February 7, 2010 on suspicion of prostitution-related activities. During the stop, the officer ran a record check on Mr. Bogan and discovered an active warrant for his arrest on a domestic violence charge. Mr. Bogan invoked his Miranda rights when the officer attempted to question him regarding prostitution. Mr. Bogan was arrested and taken to the Henderson County Detention Center. While Mr. Bogan was detained, he did not take his regular medications required for his

1  various medical conditions.[1] In the early morning of February 27, 2010, Mr. Bogan suffered
2  from severe chest pain, lost consciousness, and was taken to St. Rose Dominican Hospital
3  in Henderson, Nevada for treatment.

4        Detectives Zerbe and Gorski are detectives assigned to the Las Vegas Metropolitan
5  Police Department Vice Section's Innocence Lost Task Force.  Detective Zerbe had
6  previously interviewed a juvenile, D.F., who on February 17, 2010 had identified Mr. Bogan
7  as her pimp.  Sergeant Stewart at the Henderson County Detention Center notified Detective
8  Zerbe that Mr. Bogan was going to be released from custody due to his medical condition.
9  Detectives Zerbe and Gorski then went to the hospital where Mr. Bogan was being treated
10 to interview him.  Detective Zerbe commenced the interview at 11:30 a.m on February 27,
11 2010.  At the time, Mr. Bogan had been administered or prescribed multiple medications with
12 potentially impairing side effects.  The interview lasted approximately forty minutes and was
13 recorded by a tape recorder in Detective Zerbe's briefcase, which was sitting on the floor
14 during the interview.  Mr. Bogan was not aware the interview was being recorded.  A 48-
15 page transcript was made of the recording, although several statements made during the
16 interview were inaudible and were thus not transcribed.

17       Detective Zerbe began the interview by informing Mr. Bogan that she wanted to ask
18 him "a few questions real quick while we're here."  Mr. Bogan responded "In regards to?"
19 Detective Zerbe then stated "I'll explain in just a minute, but I have to read you your rights
20 before I talk to you.  Is that cool?"  Mr. Bogan responded "Read me my rights?"  At this
21 point, a nurse came into Mr. Bogan's room in order to perform an ultrasound and cardiogram
22 on Mr. Bogan.  The detectives indicated it would be preferable if the nurse returned at a later
23 point, which the nurse agreed to do and left the room.  Detective Zerbe then verbally
24 informed Mr. Bogan of his rights:

---

[1] Mr. Bogan has an extensive medical history: he suffers from multiple chronic diseases, has undergone more than ten major surgeries, and regularly takes more then twenty medications.

- 2 -

> ...you have the right to remain silent, anything you say can be used against you in the court of law, you have the right to the presence of an attorney, if you cannot afford an attorney, one will be appointed before questioning, do you understand these rights Mr. Bogan?

The transcript of the interview does not reflect any discernible response by Mr. Bogan to this query. At the hearing, Detective Zerbe indicated that Mr. Bogan both nodded his head and verbally responded "yeah" to acknowledge he understood his rights. Detective Gorski, however, testified that he did not recall hearing Mr. Bogan verbally respond "yes" or "yeah" to Detective Zerbe's question about whether he understood his rights, nor did he remember whether Mr. Bogan made any gesture to indicate an affirmative response to Detective Zerbe's question. Mr. Bogan testified that he did not acknowledge or waive his *Miranda* rights. At this point in the interview, the detectives had not introduced themselves, explained which agency they were with, or informed Mr. Bogan of the allegations against him or the charges he was facing.

During the interview, Detective Zerbe asked Mr. Bogan questions regarding where he had been prior to arriving in Las Vegas, the vehicle he was driving when he was arrested, and what he was doing in Las Vegas. On page 11 of the transcript, Mr. Bogan told Detective Zerbe that he could either "lawyer up" or they could continue talking. He also indicated on page 12 that he thought the detectives were interviewing him regarding the vehicle he was driving at the time of his arrest. On page 27, Mr. Bogan asked the detectives what charges he was facing; Detective Zerbe recited the charges on page 29. The remainder of the questioning dealt with the prostitution-related charges. Throughout the interview, Mr. Bogan was attached to an IV tube and a cardiac monitor. He also indicated that he was sick and in pain; at times, Mr. Bogan's responses indicate confusion and distress.

After the interview, Detective Zerbe left the hospital to book Mr. Bogan in absentia on the prostitution-related charges. Detective Zerbe also completed an advisement of rights card for Mr. Bogan's interview, which included the date and time of the interview, the file number, and her signature. The space on the form for Mr. Bogan's signature was blank, as

- 3 -

1 were the boxes to check either "yes" or "no" to the question "Do you understand these
2 rights?" Detective Zerbe indicated it was her standard practice to check either the "yes" or
3 "no" box depending on the person's response when read their rights, and that although she
4 was sure Mr. Bogan had waived his rights, she could not recall why she had not checked the
5 "yes" box in Mr. Bogan's case. She also testified that she chose not to present Mr. Bogan
6 with the *Miranda* advisement card or have him sign it, but did not offer a reason for why she
7 chose not to do so.

**II.     Analysis**

     **A.     *Miranda* Waiver**

Law enforcement officials are required to give a suspect *Miranda* warnings before conducting a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). A suspect must be informed that he has the "right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Id.* at 479. These core *Miranda* warnings are not required to be read verbatim, but their recitation must reasonably convey a suspect's rights. *See Florida v. Powell*, 130 S.Ct. 1195, 1204 (2010).

For incriminating statements made during a custodial interrogation to be admissible, a suspect must make a voluntary, knowing and intelligent waiver of his *Miranda* rights. *See United States v. Garibay*, 143 F.3d 534, 536 (9th Cir. 1998). There is a presumption against waiver, and the burden rests on the Government to establish, by a preponderance of the evidence, that a defendant's waiver of his *Miranda* rights is voluntary, knowing, and intelligent. *Id*. The waiver analysis has two parts: a waiver is voluntary if it is "the product of a free and deliberate choice rather than intimidation, coercion or deception," *Moran v. Burbine*, 475 U.S. 412, 421 (1986), and it is "knowing and intelligent if, under the totality of the circumstances, it is made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *United States v.*

1 *Rodriguez-Preciado*, 399 F.3d 1118, 1127 (9th Cir. 2005) (citations and quotations omitted).
2 The Court may also consider the background, experience, and conduct of the defendant in
3 determining whether there was a waiver. *Id.* (quoting *United States v. Doe*, 155 F.3d 1070,
4 1074 (9th Cir.1998) (en banc)). While a defendant can signal his waiver verbally or in
5 writing, he can also waive his *Miranda* rights through his course of conduct, depending on
6 the particular facts and circumstances of the defendant and his interrogation. *See Berghuis
7 v. Thompkins,* 130 S.Ct. 2250, 2261-63 (2010) (noting "waiver can be established even
8 absent formal or express statements of waiver").

9 In this case, there is no dispute that Mr. Bogan's interview constituted a custodial
10 interrogation; therefore, for Mr. Bogan's statements from the interview to be admissible, the
11 Government must establish that he voluntarily, knowingly, and intelligently waived his
12 *Miranda* rights. Under the totality of the circumstances, the Court finds the Government has
13 not met this burden. Although it is clear from the audio recording that Detective Zerbe read
14 Mr. Bogan his *Miranda* rights at the beginning of the interview, it is far from clear whether
15 Mr. Bogan acknowledged and waived those rights. There is no audible response to Detective
16 Zerbe's question about whether Mr. Bogan understood his rights, and Mr. Bogan testified at
17 the hearing that he did not affirmatively respond or indicate he waived his rights. Although
18 Detective Zerbe testified that Mr. Bogan both replied "yeah" and nodded his head to
19 acknowledge his rights, Detective Gorski did not remember either a verbal or physical
20 response from Mr. Bogan. The Court finds that Detective Zerbe's testimony in this instance
21 is not persuasive; rather, Detective Gorski's lack of recollection of an affirmative response
22 is more persuasive.

23 Although Mr. Bogan continued speaking with Detective Zerbe after she read him his
24 rights, which could suggest a waiver by conduct, the Court concludes that in these
25 circumstances, Mr. Bogan's conduct did not constitute a knowing, voluntary and intelligent
26 waiver of his *Miranda* rights. Serious questions have been raised regarding Mr. Bogan's
27 physical health and mental capacity at the time of his interview: he was in the hospital, on
28

1  a number of sedative medications, and attached to an IV tube and a cardiac monitor. Further,
2  although Mr. Bogan's testimony was sometimes evasive, self-serving, and prone to
3  exaggeration, there are several factors which support his testimony that he did not waive his
4  rights. First, Mr. Bogan has experience with the criminal justice system, and had less than
5  three weeks earlier clearly invoked his *Miranda* rights when questioned by officers about
6  prostitution. This suggests that, had Mr. Bogan been aware that the interview was being
7  conducted by detectives investigating prostitution-related charges, he would not have
8  continued speaking with the detectives and would have instead affirmatively invoked his
9  rights. The interview transcript also supports Mr. Bogan's contention that he was confused,
10 perhaps because of his pain and medicated state, about who the detectives were and that he
11 thought they were seeking information about the vehicle he was driving at the time of his
12 arrest.

13         In circumstances such as these, where the factual question of waiver is somewhat
14 murky, and the Government has within its control the ability to create solid evidence of a
15 knowing, intelligent, and voluntary waiver but nonetheless fails to produce such evidence,
16 the Government ultimately cannot be found to have satisfied its burden. Here, the interview
17 recording is very poor, and many of Mr. Bogan's statements–including his response to the
18 recitation of his rights–are inaudible because the detectives prioritized concealing the
19 recording device over making a good record of the interview. While Detective Zerbe
20 testified that she had a rights waiver card which she used to recite Mr. Bogan's rights, and
21 that it was her typical practice to have a suspect sign a waiver card, she did not have Mr.
22 Bogan sign a waiver card, and did not offer any reason for her failure to secure such a
23 waiver. Finally, the detectives made a conscious decision to not to tell Mr. Bogan the
24 charges he was facing at the outset of the interview when Mr. Bogan was read the *Miranda*
25 warnings.

26         For all of these reasons, the Court concludes that the Government has not satisfied its
27 burden of proving Mr. Bogan knowingly, intelligently, and voluntarily waived his Miranda

1 rights. His statements from the interview will accordingly be suppressed.

## B. Voluntariness of Statements

Even if Mr. Bogan had waived his *Miranda* rights, the Government would still be required to prove the voluntariness of his statements by a preponderance of the evidence. *See Missouri v. Seibert,* 542 U.S. 600, 608 n.1 (2004). In evaluating the voluntariness of a defendant's statement, the Court must determine whether, "'considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne.'" *United States v. Heller*, 551 F.3d 1108, 1112 (9th Cir. 2009) (quoting *United States v. Leon Guerrero*, 847 F.2d 1363, 1366 (9th Cir. 1988)). To assist in the voluntariness evaluation, the Court considers the following factors[2]:

> 1)[T]he time elapsing between arrest and arraignment of the defendant making the confession, ...(2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

18 U.S.C. § 3501(b); *see also United States v. Gamez*, 301 F.3d 1138, 1144 (9th Cir. 2002). No one factor is dispositive; rather, all factors are considered under the totality of the circumstances. 18 U.S.C. § 3501(b). The Court may additionally, similarly to the waiver inquiry, consider a defendant's age, education, and the nature and circumstances of any questioning to determine whether statements were voluntary. *See United States v. Haswood*, 350 F.3d 1024, 1027 (9th Cir. 2003).

The facts here do not support a finding of voluntariness. In considering the §3501(b)

---

[2]The factors listed in 18 U.S.C. §3501(b) are not dispositive in determining voluntariness, *see Dickerson v. United States*, 530 U.S. 428, 431 (2000) (considering § 3501(b) and noting "*Miranda* and its progeny ... govern the admissibility of statements made during custodial interrogation"), but, in accordance with the assumption of both parties that the §3501(b) factors are relevant here, the Court considers them in its voluntariness determination.

- 7 -

factors, the first factor is not relevant because Mr. Bogan was not arrested on these charges until after the interview took place. As to the second factor, Mr. Bogan was not informed of the nature of the offenses for which he was charged at the beginning of the interview. The interview transcript indicates that Mr. Bogan thought he was being questioned regarding the vehicle he was driving at the time of his February 7, 2010 arrest. Detective Zerbe did not inform Mr. Bogan that they were investigating prostitution-related charges until more than half the interview had been conducted. Mr. Bogan testified that he would not have waived his *Miranda* rights had he known that the questioning was regarding prostitution-related charges; indeed, this claim is supported by his invocation of his *Miranda* rights when he was questioned regarding prostitution at his February 7, 2010 arrest. This factor accordingly weighs heavily against a finding of voluntariness. As to the third and fourth factors, Detective Zerbe did advise Mr. Bogan of his *Miranda* rights at the outset of the interview. However, as discussed above, it is not clear that Mr. Bogan had the capacity to fully understand his rights at the time they were recited to him because of his medical condition and unawareness of the charges being investigated. Finally, the fifth factor weighs against a finding of voluntariness because Mr. Bogan did not have an attorney present during his questioning.

Considering more generally the totality of the circumstances, as discussed in the waiver analysis, it is clear the Government has not met its burden of proving that Mr. Bogan's statements were voluntary. At the time of his interview, Mr. Bogan was suffering from serious medical conditions and was under the influence of a number of medications which could have impacted his judgment and understanding. *See Mincey v. Arizona*, 437 U.S. 385 (1978) (finding statements made by patient during hospital interrogation not voluntary). Further, Mr. Bogan's experience with the criminal justice system and prior invocation of his *Miranda* rights suggests that he would not have voluntarily made statements had he known he was being questioned on prostitution-related charges.

- 8 -

### III.  Conclusion

Because the Government has not satisfied its burden of proving that Mr. Bogan voluntarily, knowingly, and intelligently waived his *Miranda* rights or that his statements were otherwise voluntary, Defendant's motion to suppress will be granted.

IT IS ORDERED that Defendant's Motion to Suppress Defendant's Statements for *Miranda* Violation and Lack of Voluntariness (Doc. 54) is granted.

DATED this 10th day of March, 2011.

_____
Neil V. Wake
United States District Judge